_____

No. 95-2497
_____

Independent School District      \*
No. 283,      \*
     \*
        Plaintiff - Appellee,      \*
     \*
        v.      \*
     \*
S.D., by her parents, J.D.      \*
and N.D.; J.D.; N.D.,      \*   Appeal from the United States
     \*   District Court for the
        Defendants - Appellants,      \*   District of Minnesota.
     \*
Linda Powell, Commissioner      \*
of Education; Gene Mammenga,      \*
Past  Commissioner of Education;      \*
Robert Wedl, Acting      \*
Commissioner of Education;      \*
K.S., Hearing Review Officer,      \*
     \*
        Defendants - Appellees.      \*
_____

Submitted:  December 15, 1995

Filed:  July 2, 1996
_____

Before BOWMAN and LOKEN, Circuit Judges, and WOLLE,[*] Chief District Judge.
_____

LOKEN, Circuit Judge.

     S.D. and her parents[1] requested an administrative hearing under the Individuals with Disabilities Education Act ("IDEA"), 20

_____

[*] The HONORABLE CHARLES R. WOLLE, Chief Judge of the United States District Court for the Southern District of Iowa, sitting by designation.

[1] We use the term "S.D." to refer individually to the learning-disabled child and collectively to appellants in these proceedings.

U.S.C. § 1400 *et seq.*, when Minnesota Independent School District No. 283 (the "School District") refused to reimburse S.D. for private school tuition.  A state-appointed hearing officer denied reimbursement, but a hearing review officer granted S.D. this relief.  The School District then sought judicial review in federal court, and S.D. asserted counterclaims and cross-claims under various federal and state laws.

The district court[2] granted judgment on the administrative record, concluding that the School District had substantially complied with IDEA's procedural requirements and had provided S.D. "a free appropriate public education."  See 20 U.S.C. § 1400(c); Board of Educ. v. Rowley, 458 U.S. 176, 203 (1982).  The court dismissed S.D.'s remaining claims as precluded by that judgment.  On appeal, S.D. argues that the district court erred in refusing to expand the administrative record, in reversing the state hearing review officer, and in dismissing the non-IDEA claims.  We affirm.

**I.**

S.D. suffers from severe dyslexia, which impacts her reading and mathematics skills, and attention deficit disorder, which affects her concentration and learning.  From kindergarten through third grade, S.D. attended regular classes at Peter Hobart Primary Center, a public elementary school in the School District.  In first grade, an initial special education assessment suggested that S.D. has average to above average intelligence, but her reading, writing, comprehension, and mathematics skills were below her ability.  That prompted development of an individualized education plan ("IEP") for S.D.  Under IDEA, an IEP "sets out the child's present educational performance, establishes annual and short-term

---

[2]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, who adopted the report and recommendation of the HONORABLE RAYMOND L. ERICKSON, United States Magistrate Judge for the District of Minnesota.

-2-

objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." <u>Honig v. Doe</u>, 484 U.S. 305, 311 (1988). <u>See</u> 20 U.S.C. §§ 1401(a)(20), 1414(a)(5).

S.D. continued to be "mainstreamed" in regular classes. She also began receiving special education services from a licensed learning disabilities professional and "Chapter One" mathematics instruction under a federal program designed to reinforce classroom work in a small group setting. In 1991, while S.D. was in third grade, a psychological consultant concluded that she is a visually-based dyslexic. She was also diagnosed as having attention deficit disorder. Later that year, S.D.'s mother complained that public education supplemented with special education services was inadequate, but the School District refused to pay tuition at Groves Learning Center ("Groves"), a private school for children with learning disabilities. Following a conciliation conference, the School District agreed to S.D.'s request that the psychological consultant continue to monitor progress under the IEP.

In March 1992, the IEP was amended to provide summer instruction and special education in math. S.D.'s parents requested that she be held back in third grade at Peter Hobart school. The School District recommended she be placed in third or fourth grade at Susan Lindgren Intermediate School. After another conciliation conference, the School District agreed to provide group and private instruction that summer, but not at Groves. In the fall, S.D. began fourth grade at Susan Lindgren school, with a special education teacher assigned to help her adjust to the new environment. At the end of September, S.D.'s parents enrolled her at Groves without the School District's consent.

S.D. then requested a hearing, challenging the IEPs and seeking reimbursement for her tuition at Groves. The Minnesota Commissioner of Education appointed an administrative hearing

officer. See Minn. Stat. Ann. § 120.17, subd. 3b(e); Minn. R. 3525.4000. After a twelve-day hearing, the hearing officer made detailed findings of fact and concluded: (i) "[e]xcept as to enhancing self-esteem," S.D.'s initial and modified IEPs met the requirement of IDEA and Minnesota law to provide a free appropriate public education; (ii) if S.D. had not withdrawn from public school in September 1992, "the IEP would have produced measurable educational benefit"; (iii) "Groves is not an appropriate educational placement for [S.D.] . . . because Groves does not provide the education in the least restrictive environment"; and (iv) the School District need not reimburse S.D. for tuition at Groves but must remedy IEP inadequacies by reimbursing S.D. for summer tutoring, attention deficit and psychological consultations, and self-esteem counseling. The hearing officer explained:

> [S.D.]'s self-esteem is the focal point of most of the conflicts in this matter. . . . Both sides in this matter believe that the approach they advocate for [S.D.]'s education is best for her own self-esteem.
>
> *   *   *   *   *
>
> It is interesting to note that the District generally assessed the same needs as did Groves and that it used virtually all of the same teaching techniques as are being applied at Groves. . . . Each setting has its own weaknesses and strengths. In [S.D.]'s particular case, because of her relatively severe learning disabilities, it could be debated forever which program provides the better education for her. But it is not the duty of public schools to provide the better education. It is the duty of public schools to provide an appropriate public education and the District in this case has done that and has the ability to do that in the future.

S.D. appealed to a hearing review officer. See Minn. Stat. Ann. § 120.17, subd. 3b(g). The review officer reversed. She concluded that S.D.'s IEPs "were procedurally flawed"; the School District's services "did not provide educational benefit"; the School District had not provided a "free appropriate public education"; and Groves "was an appropriate placement." Although

-4-

the review officer considered it "troubling" that S.D. spends all her time at Groves with other children with learning disabilities, the review officer concluded that "the Groves' environment is clearly superior for [S.D.]'s emotional needs," and therefore the School District must pay for S.D.'s tuition at Groves.

The School District then commenced this action, seeking judicial review of the review officer's adverse decision. See 20 U.S.C. § 1415(e). S.D. asserted counterclaims and cross-claims alleging violations of IDEA, its state law counterpart, Minn. Stat. Ann. § 120.17, and other laws.[3] The district court granted the School District judgment on the administrative record, thereby reinstating the hearing officer's decision. Concluding that the review officer had improperly reweighed the evidence, the court adopted the findings of the hearing officer "as amply supported by the preponderance of the evidence." The court further concluded that S.D. had failed to show "solid justification" for the submission of additional evidence. Turning to the key substantive issues, the court found that the School District had provided S.D. a "free appropriate public education" in a properly mainstreamed, least restrictive environment; "that Groves was not a proper placement for S.D., within the context of the IDEA"; and therefore, that the School District need not reimburse S.D. for tuition at Groves. The court agreed with the hearing officer that the deficiencies in S.D.'s IEPs were either harmless or remedied by the relief the hearing officer granted. Finally, the court dismissed S.D.'s counterclaims because the School District had complied with IDEA and dismissed her cross-claims because S.D. acquiesced in any

---

[3]Specifically, § 1983 and the Fourteenth Amendment; § 504 of the Rehabilitation Act, 20 U.S.C. § 706; the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*; the Minnesota Human Rights Act, Minn. Stat. Ann. § 363.03, subd. 5; the Government Data Practices Act, Minn. Stat. Ann. § 13 *et seq.*; and negligence.

administrative delay and suffered no harm from the Commissioner's appointment process.  S.D. appeals.

## II.

S.D. first faults the district court for granting the School District judgment on the 2000-page administrative record.  S.D. argues that this was procedurally improper because there were disputed issues of material fact, no discovery had been conducted, and S.D. wished to present additional evidence.  Under IDEA, state law governs the administrative hearing process for challenging a child's IEP.  But after exhausting these remedies, an aggrieved party may seek judicial review in federal court.  In conducting that review, the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(e)(2).

Although the statute permits the reviewing court to expand the administrative record, "[d]ecision on the record compiled before the administrative agency is the norm . . . so a party that wants the judge to take evidence rather than decide the case on the record compiled before the hearing officers had better tell him."  Hunger v. Leininger, 15 F.3d 664, 670 (7th Cir.), cert. denied, 115 S. Ct. 123 (1994).  Because the reviewing court must give due weight to the administrative proceedings, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."  Roland M. v. Concord Sch. Comm., 910 F.2d 983, 996 (1st Cir. 1990), cert. denied, 499 U.S. 912 (1991).

In this case, S.D. failed to present "solid justification" to expand the administrative record.  At the initial motion hearing, Magistrate Judge Erickson asked counsel for S.D. what evidence she

wished to add to that record.  Counsel cited evidence of S.D.'s recent progress at Groves, including test results, possible court-appointed expert testimony, and evidence of S.D.'s current emotional state.  After that hearing, it took counsel for the Commissioner months to assemble the certified administrative record, and a year elapsed before Magistrate Judge Erickson issued his report and recommendation.  Yet during that entire period, S.D. never submitted proposed additional evidence and never filed a written motion to supplement the record.  Similarly, S.D. complains that the district court denied discovery regarding state administrative practices and procedures.  But S.D. does not explain how that discovery might have produced "solid justification" for expanding the administrative record.  In these circumstances, the district court did not abuse its discretion in basing its judicial review on that extensive record.

Judicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact.  Under IDEA, the reviewing court bases its decision on "the preponderance of the evidence."  That is a less deferential standard of review than the substantial evidence test common to federal administrative law.  But it still requires the reviewing court to give "due weight" to agency decision-making.  Rowley, 458 U.S. at 206.  Other circuits have applied this rather unusual statutory standard in somewhat different fashions.  See Neely v. Rutherford County Sch., 68 F.3d 965, 969 (6th Cir. 1995) ("modified *de novo* review"), cert. denied, 116 S. Ct. 1418 (1996); Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 105 (4th Cir. 1991) (hearing officer findings are "*prima facie* correct"); Roland M., 910 F.2d at 990 ("bounded, independent" judicial review).  See also Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891-92 (9th Cir. 1995).  Here, the district court faced the task of choosing between conflicting findings and conclusions of the hearing officer and the review officer.  The court reviewed the administrative record and, expressly applying the statutory

preponderance standard, credited the hearing officer's findings because that fact-finder had an "opportunity to observe the demeanor of the witnesses and to render believability determinations."  The court then rejected the review officer's analysis because it did not give sufficient weight to the views of the School District's professional educators.  That review complied with § 1415(e)(2).  See Doyle, 953 F.2d at 105-06.

### III.

S.D. next argues that the district court, in reversing the review officer's decision, "improperly imposed its own views of educational methodology."  In conducting judicial review, "Rowley instructs us that we may not substitute our own 'notions of sound educational policy for those of the school authorities.'"  Petersen v. Hastings Pub. Schs., 31 F.3d 705, 707 (8th Cir. 1994).  We conclude the district court did not violate this principle.

IDEA enacted a strong preference that handicapped children attend regular classes with children who are not handicapped.  20 U.S.C. § 1412(5).  This gives rise to a presumption in favor of S.D.'s placement in the public schools.  See Mark A. v. Grant Wood Area Educ. Agency, 795 F.2d 52, 54 (8th Cir. 1986), cert. denied, 480 U.S. 936 (1987).  Here, the district court concluded that the review officer had ignored this presumption, had given insufficient deference to the School District's educational decisions, and had rejected the hearing officer's well-supported findings that S.D. had benefitted from the School District's programs and that her IEP "was reasonably calculated to result in measurable educational benefit."  In reversing the review officer's decision, the district court enforced the statute's educational policies, not its own.

In assessing the district court's analysis, we also bear in mind that the critical issue in this case is whether to reimburse S.D. for private school tuition.  When S.D.'s parents unilaterally

placed her in Groves, they did so "at their own financial risk." Burlington v. Department of Educ., 471 U.S. 359, 373-74 (1985). They are entitled to tuition reimbursement only if public school placement violated IDEA *and* placement at Groves was proper under the Act. See Florence County Sch. Dist. Four v. Carter, 114 S. Ct. 361, 366 (1993); Evans v. District No. 17, 841 F.2d 824, 832 (8th Cir. 1988). The review officer did not cite substantive differences between the School District's and Groves's programs, and did not explain in educational terms why IDEA's preference for "mainstreamed" public education should be ignored in this case. The district court properly concluded that the review officer's decision was inconsistent with core IDEA principles.[4]

## IV.

S.D. next contends that the district court erred in concluding that the "astounding" number of procedural inadequacies in her IEPs do not entitle her to greater relief. Congress intended that IDEA's procedural safeguards be enforced so that parents of a handicapped child will have adequate input in the development of the child's IEP. See Rowley, 458 U.S. at 189, 205-06. The district court concluded that the School District substantially complied with those statutory safeguards. S.D.'s IEPs set out educational goals and the special services to be provided. The School District maintained open communications with S.D.'s parents and allowed them to play an "aggressively participative role" in the development of the IEPs. And the School District held conciliation conferences to discuss parental complaints and heeded

---

[4]We reject as totally without merit S.D.'s contention that Magistrate Judge Erickson erred in consulting medical treatises on attention deficit disorder. Like many of S.D.'s legal arguments, this concerns an underlying issue -- whether S.D.'s parents should have made her take the drug Ritalin -- that is of only marginal relevance to the issues on appeal.

parental requests that a psychological consultant and other professionals be involved in the IEP process.

Having determined that the School District had met IDEA's core procedural requirements, the court upheld the hearing officer's conclusion that IEP deficiencies were either harmless or would be remedied by the reimbursement of certain professional fees. We agree. The critical issue in this case is whether S.D.'s parents should be reimbursed for unilaterally placing her in private school. The procedural and technical deficiencies in the IEPs that were identified by the hearing officer and the review officer did not materially affect the resolution of that issue. An IEP should be set aside only if "procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Roland M., 910 F.2d at 994. See Schuldt v. Mankato Sch. Dist. No. 77, 937 F.2d 1357 (8th Cir. 1991), cert. denied, 502 U.S. 1059 (1992); Evans, 841 F.2d at 830-31. That did not happen here.

**V.**

Finally, S.D. argues that the district court erred in dismissing her state and federal counterclaims as precluded.[5] IDEA does not "restrict or limit the rights, procedures, and remedies available" under other federal law, but it does require a claimant to exhaust administrative remedies. 20 U.S.C. § 1415(f). When that process produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim

---

[5]We reject S.D.'s contention that appellees waived the preclusion issue by failing to plead it. Preclusion may be raised by the court because "benefits of precluding relitigation of issues finally decided run not only to the litigants, but also to the judicial system." Studio Art Theatre of Evansville, Inc. v. Evansville, 76 F.3d 128, 130 (7th Cir. 1996).

preclusion may properly be applied to short-circuit redundant claims under other laws.  See University of Tenn. v. Elliott, 478 U.S. 788, 796-99 (1986); Plough v. West Des Moines Community Sch. Dist., 70 F.3d 512, 515-16 (8th Cir. 1995).

S.D.'s non-IDEA claims are based upon allegations that the School District is guilty of (1) an unlawful grade retention policy; (2) illegal delay in identifying handicapped children; (3) illegal use of Chapter One funding; (4) illegal charges for summer instruction; (5) failure to ensure a fair state hearing; (6) failure to provide equal educational opportunity; and (7) "per se negligence by violating state and federal laws."  We agree with the district court that these claims are precluded by the IDEA judgment in the School District's favor.  This resolution of the IDEA claims necessarily resolved issues one, two, three, and five in the School District's favor.  Issue six is also precluded by the finding that the School District complied with IDEA, because Minnesota law is no more demanding.  See Schuldt, 937 F.2d at 1361.  Issue four was remedied by the hearing officer's reinstated order that the School District reimburse S.D. for summer tutoring.  Issue seven adds nothing to the others and in any event was waived on appeal by S.D.'s failure to contest the district court's determination that this theory fails to state an actionable claim. See Primary Care Investors Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1212 (8th Cir. 1993).

We have carefully considered the other contentions in S.D.'s brief on appeal and conclude that each is without merit.  The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-