INDEPENDENT SCHOOL DISTRICT
NO. 283, ST. LOUIS PARK,
MINNESOTA, Plaintiff,

v.

S.D., By and Through her parents, J.D. and N.D.; J.D. and N.D.; Minnesota Commissioner of Education Linda Powell; Past Minnesota Commissioner of Education Gene Mammenga; Acting Commissioner of Education Robert Wedl; and K.S., Hearing Review Officer, Defendants,

and

K.M., By and Through his parents, J.M. and M.M., Movant for Intervention.

Civ. No. 3–93–662.

United States District Court,
D. Minnesota,
Third Division.

Oct. 18, 1996.

Susan E. Torgerson, Charles E. Long, St. Paul, MN, for Ind. Sch. Dist. No. 283.

Bernard E. Johnson, Rachel L. Kaplan, Asst. Attys. Gen., St. Paul, MN, for Linda Powell, Gene Mammenga, Robert Wedl.

Sonja D. Kerr, Inver Grove Hghts., MN, for S.D., J.D., and N.D.

## ORDER

KYLE, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That counsel for S.D. is awarded attorneys' fees and costs in the amount of $4,793.75 pursuant to the Individuals with Disabilities Education Act ("IDEA"), *Title 20 U.S.C. § 1415(e)(4)(B).*

2. That the District is directed to remit, forthwith, that amount to Sonja D. Kerr, Kerr Law Office, 5972 Cahill Avenue, Suite 110, Inver Grove Heights, Minnesota 55076.

## ORDER AND REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 23rd day of September, 1996.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Plaintiff's Motion for a Clarification of the Status of the Court's Report and Recommendation of March 13, 1995, and upon the request of the Defendants S.D., J.D., and N.D., for an award of reasonable attorneys' fees.

For reasons which follow, we grant the District's Motion to designate our prior Order and Report and Recommendation as "public data," and we recommend an award of attorneys' fees and costs to S.D., in the amount of $6,225.00.

### II. *Procedural and Factual Background*

S.D. suffers from severe dyslexia, which impacts upon her ability to perform in the

classroom. In September of 1992, without the District's consent, S.D.'s parents removed S.D. from the District's school system, and placed her in the Groves Learning Center ("Groves"), a private school for children with learning disabilities. Shortly thereafter, S.D. requested a Due Process Hearing, under the provisions of the Individuals with Disabilities Education Act ("IDEA"), *Title 20 U.S.C. § 1400, et seq.* In accordance with Minnesota law, two levels of administrative review were conducted. See, *Minnesota Statutes Sections 120.17, Subdivision 3b(a), and 120.17, Subdivision 3b(g).*

After a twelve-day Level I Hearing, which convened in February of 1993, a State-appointed Hearing Officer ("HO") concluded that S.D.'s Individualized Education Programs ("IEPs") substantially satisfied the School District's obligation to provide S.D. with a "free appropriate public education" and, therefore, the HO ruled that the District was not obligated to reimburse S.D. for the costs of her attendance, or her evaluations, at Groves, or to otherwise provide S.D. with compensatory educational services. Nor was the School District required to reimburse S.D. for all of the costs of private tutoring, or for the expenses incurred through the evaluations which S.D. had undergone. *Independent School Dist. No. 283 v. S.D. by J.D.,* Civ. No. 3–93–662, slip op. at 24 n. 25, 1995 WL 875463 (D.Minn., March 13, 1995).

Nevertheless, the HO ordered the District to reimburse S.D. for the cost of certain Extended School Year services ($395.50); for the cost of a private evaluation that was employed by the District ($1,500); for the cost of an evaluation for Attention Deficit Disorder, less any amount paid by an applicable insurance carrier ($225); and for the cost of certain counseling services ($1,000). *Petition for Attorney's Fees* at 4. As a result, the HO awarded S.D. the total amount of $2,895.50. Notably, the District has never challenged that aspect of the HO's award.

The HO's decision was appealed, by S.D., to a Hearing Review Officer ("HRO") who, on September 13, 1993, issued a decision which determined, in contrast to the HO, that S.D. had been denied a "free appropriate public education" by the School District.

As a consequence, the HRO sustained the HO's award of reimbursements, and further ordered the District to reimburse S.D. for the tuition that had been paid to Groves, by S.D., during the period from September 28, 1992, through the end of the 1993–94 school year.

On October 7, 1993, the District commenced this action, which sought a judicial review of the HRO's decision. In responding to the District's Complaint, S.D. asserted a Counterclaim against the District, and Cross-claims against the Commissioners and the HRO, which generally alleged a variety of violations of the IDEA, of the IDEA's state law counterpart (Minnesota Statutes Section 120.17), and of various other laws.

On March 13, 1995, after a thorough review of the Record before us, we issued a Report in which we recommended that the District should be granted Judgment on the Administrative Record—a determination which had the effect of reinstating the HO's decision. Accordingly, we found that the District had provided S.D. with a "free appropriate public education" and, resultantly, the District was not obligated to reimburse S.D. for her tuition at Groves. Notably, with respect to the issue of attorneys' fees, we ruled that, "[g]iven the District's acceptance of the HO's determination that S.D. and her parents should be reimbursed in the amount of $2895.50, a determination that S.D. was not a prevailing party would be excessively harsh." *Independent School Dist. No. 283 v. S.D. by J.D.,* supra at 61. Nevertheless, we deferred a recommendation concerning the amount of any fee award until additional information could be submitted by the parties, and be considered by the Court. We further directed that, in view of the sensitivity of the personal data which pertained to S.D., the file should be provisionally sealed until further Order of the Court. *Id.* at 62.

By Order dated May 16, 1995, the District Court, the Honorable Richard H. Kyle presiding, adopted our recommendation and referred the issue of S.D.'s attorneys' fees for our review and recommended disposition. Subsequently, by Order dated May 22, 1995, the District Court referred the Plaintiff's Motion, for a clarification of the status of our Report and Recommendation, for our review and recommendation. However, on June 2,

1995, S.D. appealed the District Court's Order of May 16, 1995, to the United States Court of Appeals for the Eighth Circuit and, given the pendency of that Appeal, we advised the parties, on June 6, 1995, that we would defer a ruling on the requested attorneys' fees, and on the Motion to Clarify, until the Court of Appeals had resolved the issues on appeal, and had issued its mandate. On July 2, 1996, the Court of Appeals affirmed the Order of the District Court and, on August 6, 1996, the Court's mandate was issued. *Independent School Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556 (8th Cir.1996). As a consequence, the pending Motions are now ripe for determination.

### III. *Discussion*

A. *S.D.'s Request for an Award of Attorneys' Fees.*[1]

▆▆▆ 1. *Standard of Review.* Section 1415(e)(4)(B) governs the award of attorneys' fees in actions to enforce rights under the IDEA and, in this respect, provides as follows:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to parents of a handicapped child or youth who is a prevailing party.

A claim for attorneys' fees under the IDEA "is similar to the civil rights attorney's fees award statute, 42 U.S.C. § 1988," and "should ordinarily be awarded to the prevailing party unless 'special circumstances' exist to make an award unjust." *Borengasser v. Arkansas State Bd. of Educ.*, 996 F.2d 196, 199 (8th Cir.1993). Moreover, a party need not succeed on the main issue of the litigation to be considered as having "prevailed." Rather, "[a] party prevails if it succeeded on any significant issue which achieved some of the benefit it sought." *Yankton School Dist. v. Schramm*, 93 F.3d 1369, 1377 (8th Cir. 1996).

▆▆ Nevertheless, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); see also, *Johnson v. Bismarck Public School Dist.*, 949 F.2d 1000, 1003 (8th Cir. 1991). In making this determination, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, supra. In this respect, the Supreme Court has explained:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley v. Eckerhart*, supra at 436–37, 103 S.Ct. at 1941. Moreover, the IDEA's fee-shifting provision permits the Court to reduce the fee award if a party unjustifiably rejects an offer of settlement, or unreasonably protracts the litigation. *Title 20 U.S.C. § 1415(e)(4)(D)–(F)*.

2. *Legal Analysis.* As we have noted, the initial question—whether S.D. was a "prevailing party"—has previously been determined in S.D.'s favor by our prior recommendation which was, ultimately, affirmed as the final Order of the Court. Nevertheless, as we explained in our Report and Recommendation of March 13, 1995, "the limited nature of S.D.'s success cannot be overlooked and will surely impact upon the ultimate size of the award which should be granted." *Independent School Dist. No. 283 v. S.D. by J.D.*, supra at 61.

Here, S.D.'s attorney has requested an award of fees and costs in the amount of

---

1. Somewhat cryptically, S.D. asserts, in the arguments advanced in her Memorandum, that we have concluded that, by her objection to the HO's decision and to certain procedures employed in the Level II Hearing, she has unreasonably protracted this proceeding. With this as her premise, she states that, if such were to be our conclusion, then "no fees could be awarded for the Level II proceeding as against [the Commission-ers]." We need not decide whether S.D.'s objections "unreasonably protracted the proceeding" against the Commissioners, however, since S.D. was not, ultimately, successful in any of her claims against those Commissioners. For this reason, the Commissioners are not jointly liable, with the District, for an award of S.D.'s attorneys' fees and costs.

$48,420.64. Counsel's request is based upon her averment that 418 hours were expended in her representation of S.D. at the Administrative Level[2] and, of this amount, 247 hours were consumed in the Level I Hearing.[3] At an hourly billing rate of $100.00, counsel seeks an award of $41,800.00 in attorneys' fees. She further seeks recovery of costs, in the amount of $5,795.64, inclusive of $3,925.00 which was expended on securing the testimony of two expert witnesses at the Level I Hearing. Counsel for S:D. also seeks reimbursement, in the amount of $825.00, for the time she spent in preparing her fee application. Since, ultimately, S.D. achieved success at only the Level I Hearing, we find that the two levels of the administrative proceedings warrant separate treatment. See, *S.D.'s Supp. Memo. Fees* at 12 ("[P]arents concede that * * * the Court may determine fees only on the basis of the Level I success.").

◼ Our analysis begins, therefore, with the fee request for the work involved at the Level I Hearing. The District does not contest the hourly rate being requested by S.D., nor the number of hours expended but, rather, argues that the total amount should be reduced in order to reflect the minimal success that S.D. obtained. We agree. Given the limited degree of S.D.'s success, we recommend that she be awarded 20 percent of her attorneys' fees and 20% of her expert witness costs, or $5,725.00 (20% × 247 hours × $100.00 + 20% × $3,925.00).[4] We emphasize that this award does not reflect a simple "compar[ison] [of] the total number of issues in the case with those actually prevailed upon" but, rather, our proration more properly approximates "the relationship between the amount of the fee awarded and the results obtained."[5] *Hensley v. Eckerhart*, supra at 435 n. 11, 437, 103 S.Ct. at 1940 n. 11, 1941. We find it significant that, in determining that the District had substantially provided S.D. with a free and appropriate public education, the HO rejected S.D.'s main claim for tuition reimbursement, and for any future tuition payments, which would arise from S.D.'s placement at Groves—at an annual cost of approximately $10,000.00. *S.D.'s Fee. Pet.* at 3;[6] and see also, *Independent*

---

2. Quite properly, S.D.'s counsel has not made a claim for attorneys' fees in connection with her representation of S.D. in the Federal Court judicial review proceedings, as S.D. was not a "prevailing party" in that aspect of her claim.

3. In arriving at the total number of hours spent in connection with the Level I Hearing, we have not included three hours that counsel spent in drafting an appeal from the Level I decision, since that appeal, in the end, was not fruitful.

4. Although Congress usually does not intend for the fees or costs of experts to be awarded as a component of the "reasonable attorneys' fees," see, *West Virginia University Hospitals v. Casey*, 499 U.S. 83, 88–92, 111 S.Ct. 1138, 1141–44, 113 L.Ed.2d 68 (1992), the IDEA is an exception. In permitting "fees as part of costs," a House Conference Committee Report advises: "The conferees intend that the term 'attorneys' fees as part of the costs' include reasonable expenses and fees of expert witnesses * * *." *H.R.Cong.Rep No: 687, 99th Cong., 2d Sess. 5*, reprinted in 1986 *U.S.Code Cong. & Admin.News* 1798, 1808; see also, *Field v. Haddonfield Bd. of Educ.*, 769 F.Supp. 1313, 1323 (D.N.J.1991) (awarding expert fees as part of the costs awarded under § 1415(e)(4)(B)). We have not, however, apportioned non-expert costs to the Level I Hearing because the Affidavit of S.D.'s counsel reflects that these costs were expended in connection with the Level II Hearing.

5. In determining a fee award, Courts have almost universally adopted the lodestar method, which involves multiplying the reasonable number of hours expended by a reasonable hourly rate. This method produces a presumptively reasonable fee. Cf., *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437, 103 S.Ct. 1933, 1939, 1941, 76 L.Ed.2d 40 (1983); *Brown v. Sullivan*, 917 F.2d 189 (5th Cir.1990). Here, however, any effort to more closely particularize S.D.'s attorney's fees, as having been generated by a particular legal issue, is uncompromisingly frustrated by the understandable—and, perhaps, unavoidable—generality in her attorney's time entries. As a consequence, we have appraised the totality of S.D.'s successes in the context of the totality of her claims against the District, with an additional weighting, that is attributable to the specialized nature of the legal issues involved, and so as not to discourage qualified attorneys from embarking on such challenging and socially beneficial undertakings.

6. We reject, however, the District's additional basis for reducing the amount of fees—namely, that S.D. declined its offer to settle prior to the Level I Hearing. See, *Title 20 U.S.C. § 1415(e)(4)(D)* (providing that no award may be made for services performed subsequent to the time of a written offer of settlement, if the offer is timely made, not accepted within ten days, and

*School District No. 283 v. S.D. by J.D.,* supra at 561 ("[T]he critical issue in this case is whether to reimburse S.D. for private school tuition.").

■ In turning to S.D.'s request for Level II Hearing fees, we note S.D.'s acknowledgement that the success she had obtained at that Level was later overturned. Nevertheless, she maintains that she could not have predicted that result and, therefore, she should be awarded fees for her counsel's work at that Level. We find no merit in this assertion. Whether S.D. could have predicted the reversal of the HRO's decision is of no relevance to an award of fees to a "prevailing party." Rather, we view S.D.'s success, at Level II, as a mere "tactical victor[y] in what turn[ed] out to be a losing war." *Hunger v. Leininger,* 15 F.3d 664, 670 (7th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994). In *Hunger,* the Court denied attorneys' fees to parents who had obtained interim relief, but who had not ultimately succeeded in challenging an IEP. See also, *McCartney C. v. Herrin Com. School Dist. No. 4,* 21 F.3d 173, 175 (7th Cir.1994) (dicta) ("If the judicial decision overturns the Level II decision, the parent will not, other than in an extraordinary case, have been the prevailing party and will not be entitled to fees."). Accordingly, we deny all fees and costs in connection with the Level II Hearing, since the ultimate result of those efforts was, undeniably, short-lived.

■ As to S.D.'s request for fees incurred in the preparation of her fee petition, we are not directed to any authority, nor have we independently discovered any, which hold that such fees are *not* awardable under the IDEA. See, *Mass. Dept. of Public Health v. School Committee,* 841 F.Supp. 449, 462 (D.Mass.1993) (noting that "there is no legal support for the general proposition that hourly rates must be reduced for work on a fees petition"); *Rollison v. Biggs,* 656 F.Supp. 1204, 1210 (D.Del.1987) (because the Plaintiffs were considered prevailing parties, they were entitled to fees for litigating the fee petition). While we conclude that such services entitle an award of fees, we find, nevertheless, that the 8.25 hours, which S.D. claims to have expended on the fee Petition, to be excessive. Accordingly, we reduce the reasonable time expended to a total of 5 hours, which results in a fee award of $500.00 (5 hours × $100.00), for the time S.D.'s attorney expended in preparing the fee Petition.

Accordingly, we recommend an award of attorneys' fees and costs in the amount of $6,225.00.[7]

**B.** *The District's Motion for Clarification of Data Status.*

■ By this Motion, the District asks that we designate our Report and Recommendation of March 13, 1995, as it was adopted by the District Court on May 16, 1995, as "public data." The District argues that public

the relief finally obtained is not more favorable than the offer of settlement). By letter dated January 21, 1993, the District tendered the following offer: "The District will discuss a compromise of [S.D.'s] tuition payments at Groves School by paying a portion of the tuition for the 1992–1993 school year if the IEP team, including Groves staff and the parents, as well as District 283 staff, can agree on a re-entry plan by which [S.D.] attends District 283 schools by the start of the 1993–94 school year." On its face, the offer is no more than an entreaty to "discuss" a possible settlement, and the offer does not specify the portion of the tuition that the District would agree to pay. Under these circumstances, the offer is too vague and indefinite to properly limit S.D.'s recovery of her costs and fees.

**7.** The District contends that any amount of fees, which otherwise could be awarded to S.D., should be further reduced because her counsel

unreasonably protracted the resolution of this matter. Indeed, Section 1415(e)(4)(F)(i) permits a Court to reduce the amount of fees awarded when the parent "unreasonably protracted the final resolution of the controversy." We do not believe that such a protraction occurred here, however. Rather, as we have previously noted, "[t]he course of S.D.'s educational progress has been generously strewn with the good will, dedication and seemingly indefatigable perseverance of her teachers, of her parents and of her school administrators." *Independent School Dist. No. 283 v. S.D. by J.D.,* Civ. No. 3–93–662, slip op. at 30, 1995 WL 875463 (D.Minn. March 13, 1995); compare, *Johnson v. Bismarck Public School Dist.,* 949 F.2d 1000, 1004 (8th Cir.1991) (upholding denial of attorneys' fees where counsel "frustrated the statute's purpose by withholding efforts at meaningful cooperation until formal litigation was commenced.").

policy warrants that this decision be made available to the public.[8]

In response, S.D. maintains that the Report should remain sealed in order to protect her privacy interests. Specifically, she claims that the potential for harm, by the release of sensitive information, outweighs the public's interest in the dissemination of the decision. According to S.D., the sensitive materials include information about her grades, the names of her teachers, and her psychological and medical care.

■ While recognizing a common law right of access to Court records, the Eighth Circuit has declined to adopt a strong presumption of common law access. *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986). Rather, whether Court records should be sealed "requires a weighing of competing interests" and, therefore, is a decision that is committed to the sound discretion of the Trial Court. *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir.1990). As the Supreme Court has explained, "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for an improper purpose." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978).

In our view, the proper balance is struck in favor of designating the Report and Recommendation, as well as the District Court's Order of affirmance, as public data, while retaining the confidentiality of the remainder of the file. In making this determination, we note that the Eighth Circuit has published its decision, which affirmed the District Court's Order in this matter and, therefore, S.D.'s concern, over the confidentiality of the personal identifiers in the Record, has been unalterably mooted. *Independent School Dist. No. 283 v. S.D. by J.D.*, supra at 558–59. Not only has the Eighth Circuit published many of the identifiers that are claimed to

be confidential but, in doing so, it has, for all practical purposes, signaled its view as to the importance of the issues presented in this case. As reflected in the Eighth Circuit's Plan for Publication of Opinions, an opinion should be published when, *inter alia*, the case or opinion:

(c) applies an established rule of law to a factual situation significantly different from that in published opinions, [or]

(d) involves a legal or factual issue of continuing or unusual public or legal interest.

*Eighth Circuit Plan for Publication of Opinions* at ¶ 4.

While we do not presume to speak for the Eighth Circuit, the plain inference appears that, given our prior Order to seal the Record in this matter, the Court of Appeals was providently moved to publish its resolution of S.D.'s appeal for good cause. Moreover, both the Eighth Circuit, and this Court, have taken pains to guard the identities of the parties and we find that a sealing of the Record as a whole, as augmented by our prior efforts to shield S.D.'s identity from public view, are sufficient. Accordingly, we grant the District's Motion to treat the Report and Recommendation, and the District Court's Order of affirmance, as "public data."

NOW, THEREFORE, It is—

ORDERED:

That the District's Motion to Clarify Court File Status [Docket No. 98] is GRANTED, and we direct that the Report and Recommendation of March 13, 1995, as well as the District Court's Order of affirmance, shall be designated as "public data," while that the remainder of the Clerk's file shall remain sealed.

AND, It is—

RECOMMENDED:

That the Court enter an Order:

Civ. No. 3–93–662, slip op. at 62, 1995 WL 875463 (D.Minn. March 13, 1995). Given this language, the District did not waive its right to seek a clarification, by filing a Motion some six days after the District Court adopted our Report and Recommendation.

8. S.D.'s alternative contention, that the District waived its right to file its Motion to Clarify, by not filing an objection to the Report and Recommendation, is without merit. The Order portion of the Report expressly stated that the file would remain sealed "until further Order of the Court." *Independent School Dist. No. 283 v. S.D. by J.D.*,

a. Awarding counsel for S.D. attorneys' fees and costs in the amount of $6,225.00, pursuant to the Individuals with Disabilities Education Act ("IDEA"), *Title 20 U.S.C. § 1415(e)(4)(B);* and,

b. Directing the District to remit, forthwith, that amount to Sonja D. Kerr, Kerr Law Office, 5972 Cahill Avenue, Suite 110, Inver Grove Heights, Minnesota 55076.

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 10, 1996,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 10, 1996,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.