# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2187
No. 10-2189

_____

| | | |
|---|---|---|
| Park Hill School District, | * | |
| | * | |
| Plaintiff - Appellee/ | * | |
| Cross-Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| Kevin Dass and Cheryl Dass, | * | Western District of Missouri. |
| Individually and as parents of D.D., | * | |
| a minor, and K.D., a minor, | * | |
| | * | |
| Defendants - Appellants/ | * | |
| Cross-Appellees. | * | |

_____

Submitted:  March 17, 2011
Filed:  September  9, 2011

_____

Before RILEY, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Twin brothers D.D. and K.D. were born on January 28, 2000.  They reside in the Park Hill School District in Kansas City, Missouri ("the District").   Their significant cognitive, adaptive, social/emotional, physical, and communication-related difficulties meet the definition of "child with a disability" in the Individuals with Disabilities Education Act (IDEA), which requires that public schools accepting federal funds provide disabled students with a "free appropriate public education"

(FAPE). See 20 U.S.C. §§ 1401(3), 1412(a)(1)(A). Two administrative hearing panels ("the Panels") concluded that the District failed to provide D.D. and K.D. a FAPE in 2005, but did provide one in 2006. The district court upheld these decisions and later awarded $25,000 in attorney's fees to the boys' parents, Kevin and Cheryl Dass ("the Parents"), as partially prevailing parties. The Parents and the District cross appeal. The Parents argue the District failed to provide a FAPE in both 2005 and 2006 and appeal the district court's substantial reduction of the attorney's fee they requested. The District argues it provided a FAPE in 2005 as well as 2006, so the award of any fee was improper. Disagreeing with the Panels and the district court, we conclude the District offered D.D. and K.D. a FAPE in 2005 and therefore reverse the award of a reduced attorney's fee. We affirm the district court's ruling that the Parents waived or abandoned their appeal of the Panels' 2006 FAPE decisions.

## I. The 2005 Rulings

According to evaluations conducted in 2003, each boy suffers extensively from medically diagnosed autism, which prevents him from attending school in a regular classroom. The District developed Individualized Education Plans (IEPs) for D.D. and K.D. in February 2004. In April, the Parents enrolled the boys in the District's early-childhood program, Bright Beginnings. They filed a due process complaint against the District on the first day and withdrew the boys a month later. Their fifteen days at Bright Beginnings are the only time D.D. and K.D. attended a District school. However, the District prepared annual IEPs for the boys in 2005 and 2006.

In August 2004, the Parents enrolled D.D. and K.D. at Partners in Behavioral Milestones (the "Partners"), a private school that specializes in educating children with disabilities. In December 2004, to settle the Parents' pending due process complaint, the District agreed to pay tuition and certain expenses to attend the Partners through July 31, 2005. In early 2005, the District's IEP team developed new IEPs for the boys with substantial parental input. The District provided revised IEPs on June 3, 2005 (the 2005 IEPs), along with a letter advising the Parents that some

-2-

modifications they requested had been rejected. The 2005 IEPs placed D.D. and K.D. in the autism classroom at the District's Graden Elementary School ("Graden") for the 2005-2006 school year. The Panel decisions noted that this autism program "has had success." During the IEP team's development of the 2005 IEPs, the Parents did not object to this public school placement. Within days of receiving the IEPs, however, the Parents filed due process complaints, complaining of too little one-on-one instruction, failure to specify "errorless learning" as a "prompting strategy," and failure to mandate "specific methodologies." By reason of the IDEA's "stay-put" provision, filing due process complaints meant that the District could not unilaterally change the private placement of D.D. and K.D. at the Partners during the administrative proceedings, which took more than two years to complete. See 20 U.S.C. § 1415(j); M.M. v. Special Sch. Dist. No. 1, 512 F.3d 455, 464 (8th Cir.), cert. denied, 555 U.S. 979 (2008).

The Parents dismissed their complaint as to K.D. in December 2005. With D.D.'s complaint still pending, the District prepared IEPs for the 2006-2007 school year (the 2006 IEPs). K.D.'s was presented in February 2006. The Parents promptly filed a due process complaint and reasserted their complaint regarding K.D.'s 2005 IEP. D.D.'s 2006 IEP was presented in June 2006, and the Parents again filed a due process complaint. Each Panel consolidated the Parents' 2005 and 2006 complaints.

The Panel resolved D.D.'s complaints on August 6, 2007, after seventeen days of evidentiary hearings.[1] The Panel rejected the Parents' principal substantive objections to the 2005 IEPs, concluding:

---

[1]Consistent with a stipulation agreement between the District and the Parents, K.D.'s Hearing Panel entered an order "in a form substantially identical to . . . and incorporat[ing] the reasoning employed by the Hearing Panel in [D.D's] case." Therefore, the decision by K.D.'s Panel requires no separate discussion.

[T]he real dispute between the Parents and the District revolves around the Parents' demand that the District commit to providing the Student with a specified number of hours of one-on-one errorless teaching, in a low sensory environment, with positive reinforcement.

\* \* \* \* \*

Forcing the District to use a single strategy or methodology imposes both practical and legal concerns, and could even be to the Student's detriment, as explained by Dr. Smith. The Panel concludes that the District properly refused to commit to an IEP in which the District would have been constrained in its choice of methodologies.

The Panel nonetheless concluded that the 2005 IEPs were deficient, and therefore the District failed to offer D.D. and K.D. a FAPE that school year, because the IEPs "did not include strategies that would have adequately addressed [their] transition to Graden" and did not include a behavior intervention plan or otherwise adequately address behavior issues. The Panel noted but refused to consider the fact that the District developed a transition plan in August 2005 because "this Panel must consider the [June 2005] IEP before it." Further concluding that the Partners was an appropriate placement for the boys during that year, the Panel ordered the District to reimburse the Parents for private educational and mileage expenses incurred in placing the boys at the Partners that school year. The district court upheld this ruling by both Panels, concluding they were supported by the administrative record and the Panels made no error of law.

On appeal, the District argues that the Panels and the district court erred in concluding that the 2005 IEPs failed to make a FAPE available. We review this question *de novo*, according due weight, as the district court did, to the decisions of the Panels. The Parents have the burden of persuasion as to the inadequacy of the IEPs. See Lathrop R-II Sch. Dist. v. Gray, 611 F.3d 419, 423-24 (8th Cir. 2010), cert. denied, 131 S. Ct. 1017 (2011).

During the 2005-2006 school year, the Parents enrolled D.D. and K.D. in a private school, the Partners, refusing the District's offer of placement in its public school autism program at Graden. In these circumstances, reimbursement of private placement costs may be ordered only "if the court or hearing officer finds that the [District] had not made a [FAPE] *available* to the child in a timely manner." 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); see CJN v. Minneapolis Pub. Schs., 323 F.3d 630, 637 (8th Cir.), cert. denied, 540 U.S. 984 (2003). In this case, that question turns entirely on the adequacy of the 2005 IEPs.

The IDEA provides that, at the beginning of each school year, a school district "shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program." 20 U.S.C. § 1414(d)(2)(A). The IEP is a "written statement . . . that is developed, reviewed, and revised in accordance with section 1414(d)." 20 U.S.C. § 1401(14). "The standard to judge whether an IEP is appropriate under IDEA is whether it offers instruction and supportive services reasonably calculated to provide some educational benefit to the student for whom it is designed." Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000), citing Bd. of Educ. v. Rowley, 458 U.S. 176, 201 (1982). "Some educational benefit" is sufficient; a school need not "maximize a student's potential or provide the best possible education at public expense." Gray, 611 F.3d at 427 (quotation omitted). Courts "must be careful not to require more from an IEP" than what is described in § 1414(d). Fort Osage R-1 Sch. Dist. v. Sims, 641 F.3d 996, 1003 (8th Cir. 2011).

For children the age of D.D. and K.D., the requirements of 20 U.S.C. § 1414(d)(1)(A)(i) are that the 2005 IEPs include: (1) a statement of the student's present levels of academic and functional performance, (2) measurable annual goals, (3) a description of how progress will be measured, (4) a statement of educational and related services to be provided, (5) an explanation of the extent to which the student will not be in the regular classroom, (6) a statement of accommodations necessary to measure achievement, and (7) the date on which services will commence. In addition, § 1414(d)(3) requires that the IEP Team "in the case of a child whose behavior impedes the child's learning or that of others, *consider* the use of positive behavioral

interventions . . . and other strategies." (Emphasis added.) An IEP is set aside "only if procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Gray, 611 F.3d at 424, quoting Ind. Sch. Dist. No. 283 v. S.D. ex rel J.D., 88 F.3d 556, 562 (8th Cir. 1990); see 20 U.S.C. § 1415(f)(3)(E).

Despite concluding that the District's autism program was substantively appropriate, the Panels held that the Parents were entitled to reimbursement because the lack of transition strategies and a behavior intervention plan in the 2005 IEPs deprived D.D. and K.D. of a FAPE. We disagree. The IDEA only *requires* that an IEP include "transition services" and a "behavioral intervention plan" in limited circumstances not present in this case. See 20 U.S.C. §§ 1414(d)(1)(A)(i)(VIII), 1415(k)(1)(F); 34 C.F.R. §§ 300.320(b), .324(a)(2)(i). Otherwise, § 1414(d)(3) requires only that, if the child's behavior impedes learning, the IEP team must "consider" the use of behavior interventions and other strategies. See Robert B. ex rel. Bruce B. v. W. Chester Area Sch. Dist., No. 04-CV-2069, 2005 WL 2396968, at *8 (E.D. Pa. Sept. 27, 2005).

The absence of IEP provisions addressing transition and behavior issues does not, standing alone, violate the IDEA or deprive the disabled child of a FAPE. See Gray, 611 F.3d at 426; Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 25-26 (1st Cir. 2008); Sch. Bd. of Ind. Sch. Dist. No. 11 v. Renollett, 440 F.3d 1007, 1011 (8th Cir. 2006). In other words, as numerous cases confirm, the absence of these provisions in the 2005 IEPs was at most a procedural, not a substantive error. Fort Osage, 641 F.3d at 1004; Gray, 611 F.3d at 424 (IEP's alleged lack of "baseline data" a procedural flaw); Lessard, 518 F.3d at 25-26; Renollett, 440 F.3d at 1011 (IEP's lack of written behavior intervention plan a procedural flaw). If D.D. or K.D. had attended a District school, and if the transition services or behavior interventions the District actually provided were alleged to deny a FAPE, that would raise an issue of substantive error. Lessard, 518 F.3d at 29-30; CJN, 323 F.3d at 638; Neosho R-V

-6-

Sch. Dist. v. Clark, 315 F.3d 1022, 1027 & n.3 (8th Cir. 2003). But in a case where the Parents refused to give the District an opportunity to implement the IEPs and private school reimbursement was the issue, the Panels' failure to recognize this critical distinction was an error of law. See Ind. Sch. Dist. No. 283, 88 F.3d at 562.

The Panels committed another error of law when they refused to consider a transition plan formulated by the District in August 2005, before the start of the 2005-2006 school year. Although we typically "examine the IEPs from the perspective of the time when they were written," Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 613 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998), the IDEA mandates that parents, after filing a due process complaint, meet with the school district to "discuss their complaint, and the facts that form the basis of the complaint," and to provide "the opportunity to resolve the complaint." 20 U.S.C. § 1415(f)(1)(B)(i)(IV). Here, the transition to Graden had not occurred.[2] There was time for ongoing planning, and the District took advantage of that opportunity. In these circumstances, we reject the Panels' unwarranted assumption that this alleged IEP omission "compromised the pupil's right to an appropriate education." As we have repeatedly noted:

> The purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem.

M.M., 512 F.3d at 460 (quotation omitted).

For similar reasons, we reject the Panels' assumption that the lack of a behavior intervention plan in the 2005 IEPs was a procedural inadequacy that "compromised the pupil's right to an appropriate education." The 2005 IEPs noted D.D.'s and K.D.'s

---

[2]We question whether the District was required "to design a transition plan until the parties had agreed on [D.D.'s and K.D.'s] actual placement." Brown v. Bartholomew Consol. Sch. Corp., 442 F.3d 588, 595 (7th Cir. 2006).

individual behavioral issues, as well as other limitations and concerns, reflecting that the IEP team had considered strategies to "address that behavior." § 1414(d)(3), 34 C.F.R. § 300.324(a)(2). District personnel testified that they had intended to use teaching methods and strategies that had worked with other autistic students at Graden and, if that proved unsuccessful with D.D. or K.D., conduct a functional behavioral assessment and develop an individualized behavior intervention plan. The Parents frustrated this strategy when they refused to enroll D.D. and K.D. at Graden. After the boys had attended the Partners for most of the 2005-2006 school year, the Partners' staff developed a written Behavior Plan. The District's staff, having observed the boys for many hours at the Partners, included that Plan in the 2006 IEPs, which the Panels concluded adequately addressed behavior issues. The Panels had no reason not to assume the same process would have occurred had the Parents enrolled D.D. and K.D. at Graden.

For these reasons, the Panels erred in concluding that the 2005 IEPs did not make a FAPE available to D.D. and K.D. in a timely manner. As the 2005 IEPs did not violate the IDEA, the district court erred in upholding the Panels' decisions ordering the District to reimburse the Parents for the expenses incurred in placing D.D. and K.D. at the Partners. "The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations." C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 72 (3d Cir. 2010); see generally Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 12-14 (1993).

## II. The 2006 Rulings

The Parents argue, in a confusing and disjointed manner, that the Panels and the district court erred in concluding that the District's 2006 IEPs were "reasonably calculated to provide some educational benefit." The district court declined to rule on the merits of this issue, and so do we.

When the parties filed competing dispositive motions, the district court ordered, without objection by the Parents, that both sides file suggestions in support "no greater than forty (40) pages in length" and "in substantial conformity with Federal Rule of Appellate Procedure 28." Three months later, the Parents filed a motion to exceed this page limit, which the court denied. The Parents then filed a 23-page "Motion for Judgment on the Administrative Record" *and* a 40-page "Suggestions in Support." Adhering to its page limit, the court struck the Motion and considered only the Suggestions in Support.

The Suggestions in Support contained no legal argument or authority to support the Parents' conclusory assertion that the 2006 IEPs failed to provide D.D. and K.D. a FAPE, only a statement that the Parents "incorporate by reference" the arguments they made to the administrative Panels. Concluding that this was insufficient to preserve the issue for appellate review under F.R.A.P. 28(a)(5), the district court ruled that the Parents "waived their right to review" of the Panel decisions upholding the 2006 IEPs. In a case seeking review of an IDEA administrative decision, a claim not articulated to the district court cannot be raised on appeal, even if it was raised to the administrative hearing officer. G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 950 (1st Cir. 1991).

On appeal, the parents do not even address the merits of the district court's waiver ruling, which means it is not properly before us. In any event, the district court committed no error or abuse of discretion. A district court reviewing an administrative agency decision on the administrative record is functionally analogous to an appellate court. Thus, the district court did not abuse its discretion when it adapted the rules of appellate procedure to its proceedings. F.R.A.P. 28(a)(9) provides that an appellant's brief must include an argument section containing "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." It is "not sufficient merely to incorporate arguments" that were made elsewhere. 16AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3974.1 (4th ed. 2008); see Eighth Circuit

Rule 28A(j). We have repeatedly held that issues presented in this cursory fashion are waived. See United States v. Howard, 532 F.3d 755, 760 (2008); Sidebottom v. Delo, 46 F.3d 744, 750 (8th Cir. 1995); Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1212 (8th Cir. 1993). The principle applies as well in the review of administrative agency decisions. See Duncan's Point Lot Owners Ass'n Inc. v. FERC, 522 F.3d 371, 377 (D.C. Cir. 2008).

### III. Attorney's Fees

As we have concluded that the District's 2005 and 2006 IEPs did not violate the IDEA, the Parents are not the "prevailing party" on any issue. Therefore, the award of an attorney's fee was improper. See 20 U.S.C. § 1415(i)(3)(B).

The judgment of the district court is affirmed in part and reversed in part. The case is remanded with instructions to enter final judgment in favor of the District.

_____