# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2352

_____

Mindy Reaves,

        Appellant,

v.

Missouri Department of Elementary
and Secondary Education; Missouri
Division of Vocational Rehabilitation;
D. Kent King,

        Appellees.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: April 14, 2005
   Filed: September 2, 2005

_____

Before MELLOY, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

     Mindy Reaves appeals the district court's[1] order granting summary judgment for the Missouri Department of Elementary and Secondary Education ("Department"), the Missouri Division of Vocational Rehabilitation ("Division"), and D. Kent King

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

in Reaves's action under the Rehabilitation Act of 1973 ("Act"), 29 U.S.C.§§ 701-796l.  We affirm.

I.

Reaves is a disabled person and a client of the Division.  The Division, as Missouri's "designated State agency," 29 U.S.C. § 721(a)(2)(A), is charged with providing vocational rehabilitation services for individuals with disabilities in the State.  29 U.S.C. §§ 720, 721-723.  The Division is organized as part of the Department, of which King is the appointed Commissioner.

In 1998, Reaves requested support from the Division in her pursuit of a career as what is known as an "electro-acupuncture according to Voll" ("E.A.V.") technician.  In particular, she sought financial support to allow her to purchase an "electro-dermal" device known as the bio-energetic stress testing ("B.E.S.T.") system, which she would use to detect stress levels in human and animal patients.  Reaves had past personal experience with the B.E.S.T. system, and credited it with diagnosing the cause of symptoms from which she suffered after a car accident.

At the Division's request, Reaves attended an assessment and consultation clinic in July 1999 at the University of Missouri-Columbia and began work on a business plan.  Later that year, the director of field operations at the Division noted that Reaves's business plan was not adequately developed and suggested that she attend the Southwest Missouri State University's small business program.  The Division also provided private assistance for Reaves in formulating her business plan.

Eventually, Reaves submitted a business and financial plan proposing a sole proprietorship and estimating her total sales revenue for the first year of her business at $172,800.  The plan called for revenue of $112,800 from examinations using the B.E.S.T. system and $60,000 from the sale of homeopathic medicines.  After

subtracting costs and operating expenses, Reaves's projected net income before taxes was $138,734. Reaves's revenue estimates were derived from her expectation of treating sixteen patients per week with the B.E.S.T. system, 40 percent human at $150 per exam, 30 percent canine at $70 per exam, and 30 percent equine at $200 per exam. She also expected to sell an average of $75 in homeopathic products per exam.

At a meeting with Reaves and her parents, Melissa Steele-Lufcy, the supervisor of the Division office with which Reaves was working, denied Reaves's business plan proposal. A letter confirming the denial dated April 19, 2002, cited the following factors as reasons for the denial:

1. Reaves's limited concentration abilities, her difficulty with impulsivity, and her decreased higher-level organizational skills;

2. Reaves's "difficulty with decision making and problem evaluation/solving skills," resulting in frequent confusion when facing complex choices;

3. Reaves's anxiety in response to stress, which, the Division believed, could impair decision-making abilities;

4. Reaves's "passive/aggressive tendencies," which, according to the Division, could interfere with her judgment and her decision-making abilities;

5. Reaves's slowness in responding to requests for "business plan items" and in completing tasks associated with her business plan; and

6. The "extremely limited" number of practitioners in the Midwest area who had demonstrated financial success with the "B.E.S.T." system.

The letter also stated that in the course of Steele-Lufcy's decision-making process, "the business plan . . . was reviewed with other Vocational Rehabilitation colleagues."

After Reaves requested a review of Steele-Lufcy's decision, a meeting was held among Reaves, her father, and Tony Logan, the Division's Regional Manager, at which Reaves's situation was discussed. Logan agreed to review Reaves's business plan and her Division file. After his review, Logan issued a letter again denying Reaves's request. Logan's letter did not mention the disabilities cited by Steele-Lufcy, but instead noted that "[t]he Best System is not recognized by the American Medical Association, nor is the procedure accepted as a billable service by insurance companies." (J.A. at 249). It further noted that "the service has not been approved by Medicaid or Medicare," and that "[i]n the context of health management and interventions, it appears necessary to possess credentials and expertise in a field recognized by the A.M.A." (*Id*.). Reaves's request for funding to purchase the B.E.S.T. System was therefore denied.

Following a failed attempt at mediation, Reaves requested a due process hearing to which she was entitled by statute. 29 U.S.C. § 722(c)(5)(A). Reaves sought to have the scope of the hearing confined to Logan's denial letter, but the hearing officer denied her request and considered "all evidence relating to the denial of the vocational goal referred to in Mr. Logan's letter." (J.A. at 22). Evidence considered by the hearing officer over Reaves's objection included Steele-Lufcy's letter and the evidence on which it was based, a press release from the State of Oregon's Department of Justice regarding the Oregon Attorney General's lawsuit against a healthcare company using electro-dermal testing, and two Internet reports on electro-diagnostic testing and homeopathic medicine by Stephen Barett, M.D., posted at "www.quackwatch.com." The hearing officer also considered two Missouri statutes, one proscribing the illegal practice of medicine, Mo. Rev. Stat. § 334.010,

-4-

and another barring the illegal practice of veterinary medicine, Mo. Rev. Stat. § 340.216. The hearing officer upheld the Division's denial of funding in a decision issued May 29, 2003.

On June 10, 2003, Reaves requested administrative review of the hearing officer's ruling by Commissioner King, pursuant to federal and state regulations. *See* 34 C.F.R. § 361.57(g); Mo. Code Regs. Ann. tit. 5, § 90-4.420. She sought a copy of the hearing transcript as well as an opportunity to brief and argue her position. On June 11, 2003, an assistant attorney general recommended to Commissioner King that Reaves be given a transcript and be permitted to brief her position within five business days of receiving the transcript, but that her request for oral argument be denied. On June 12, 2003, Reaves replied with a proposal that she have ten business days to prepare her brief and additional evidence after receipt of the transcript.

A copy of the hearing transcript was delivered to Reaves on June 30, 2003, along with a letter requesting a response by July 7, 2003. Reaves sought an extension of the deadline, but was denied. After receiving additional materials from Reaves, the Commissioner upheld the decision of the hearing officer, finding that "there were sufficient grounds for the finding of the hearing officer in this matter." (J.A. at 407). The Commissioner continued, "it is my decision that the findings of the impartial hearing officer to deny financial assistance with the B.E.S.T. system should be sustained." (*Id.*).

Reaves then sought review of the due process hearing and Commissioner King's decision in the Western District of Missouri pursuant to 29 U.S.C. § 722(c)(5)(J). The district court, applying by analogy the standard of review applicable under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, made "'an independent decision of the issues based on a preponderance of the evidence, giving "due weight" to the state administrative proceedings,'" (Add. at 2) (quoting *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607,

610 (8th Cir. 1997)), and ruled that neither Reaves's due process nor statutory rights were violated during the state review process.

## II.

Title I of the Rehabilitation Act, 29 U.S.C.§§ 720-751, authorizes grants "to assist States in operating statewide . . . programs . . . [d]esigned to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice," with the goal of preparing and enabling such individuals to "engage in gainful employment." 34 C.F.R. § 361.1. To be eligible for these grants, States must submit plans that comply with 29 U.S.C. § 721. 29 U.S.C. § 721(a). The state plans under § 721 must provide for the development and implementation of "individualized plans for employment" for certain disabled individuals. *See id*. § 721(a)(9); 34 C.F.R. § 361.45. An individualized plan for employment is required to contain, among other things, "a description of the specific employment outcome that is chosen by the eligible individual, consistent with the [individual's] unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice." 29 U.S.C. § 722(b)(3)(A); *accord* 34 C.F.R. § 361.46(a). Whether an employment outcome is "consistent" with the listed attributes ultimately is subject to the State's determination: the choice of the individual must be "approved and signed by a qualified vocational rehabilitation counselor employed by the designated State unit." 29 U.S.C. § 722(b)(2)(C)(ii).

Section 102(c) of the Act, codified at 29 U.S.C. § 722, requires participating States to establish procedures for mediation and review of "determinations made by personnel of the designated State unit that affect the provision of vocational rehabilitation services to applicants or eligible individuals." 29 U.S.C. § 722(c)(1). One of the procedures States are required to use is a "due process hearing," 29 U.S.C. § 722(c)(1), conducted by "an impartial hearing officer" who is to review such

determinations. The Act further provides for judicial review of the hearing officer's decision. Section 722(c)(5)(J) provides that "[a]ny party aggrieved by [a final decision of a hearing officer after a due process hearing pursuant to § 722(c)(2) or of a state reviewing official pursuant to § 722(c)(5)(D)] may bring a civil action for review of such decision," and it is under this section that Reaves proceeds.

A.

Reaves challenges the district court's determination that a preponderance of the evidence supported the Division's denial of funding for the B.E.S.T. system. As a preliminary matter, the parties dispute the standard of review to be applied by a district court under § 722(c)(5)(J). The parties agree that the district court properly considered cases applying the IDEA for guidance in interpreting the Rehabilitation Act's standard of review, but they differ over what these cases require. Reaves contends that the district court's review should be limited to whether the hearing officer and Commissioner King's findings of fact rely on substantial and competent evidence. The appellees suggest that the district court is required to give "due weight" to the state proceedings.

We agree that the district court was correct to look to cases interpreting the IDEA for guidance regarding the appropriate standard of review under § 722(c)(5) of the Rehabilitation Act, given that the text and structure of the statutes are virtually identical. Section 615(i)(2)(B) of the IDEA provides as follows:

> In any action brought under this paragraph, the court . . . (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

In *Board of Education v. Rowley*, 458 U.S. 176 (1982), the Supreme Court interpreted this language to prohibit reviewing courts from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Id*. at 206. According to the Court, the requirement that the reviewing court "'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Id*. (alteration in original).

Like the IDEA, the Rehabilitation Act requires a reviewing court to receive the records of the state proceedings, before hearing additional evidence and basing its decision on a preponderance of the evidence:

> [T]he court . . . (I) shall receive the records relating to the [due process] hearing . . . and the records relating to the State review . . . (II) shall hear additional evidence at the request of a party to the action; and (III) basing the decision of the court on the preponderance of the evidence, shall grant such relief as the court determines to be appropriate.

29 U.S.C. § 722(c)(5)(J)(ii). We conclude, therefore, that as under the IDEA, the reviewing court should determine whether the agency's decision is supported by a preponderance of the evidence, while giving "due weight" to the conclusions reached in the State's due process hearing. This "rather unusual statutory standard," *see Indep. Sch. Dist. No. 283 v. J.D. ex rel. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996), is more deferential than *de novo* review, and requires the district court to refrain from substituting its own notions of sound policy for those of the state authorities. *Cf. Rowley*, 458 U.S. at 206. Neither party has proposed an *appellate* standard of review of the district court's determination, but at least where the district court received no new evidence and made no independent factual findings, we conclude that *de novo* review of the district court is appropriate. *Cf. Neosho R-V School Dist. v. Clark*, 315 F.3d 1022, 1027 (2003); *Clynes*, 119 F.3d at 611; *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521-22 (D.C. Cir. 2005).

Applying these standards of review to the present case, we believe that the district court correctly concluded that the determinations of the hearing officer and Commissioner King upholding the Division's refusal to approve Reaves's employment choice were supported by a preponderance of the evidence. The hearing officer and Commissioner King considered evidence that the position of E.A.V. technician required medical credentials and expertise that Reaves did not possess, and that the B.E.S.T. System was not recognized by the AMA, Medicaid, Medicare, or by insurance companies. They also considered testimony that Reaves was not well suited to a position, such as ownership of a service-industry business, that required concentration, organization, and a high level of responsibility – factors that were outlined in Steele-Lufcy's denial letter. Reaves presented no contradictory evidence at the due process hearing regarding these grounds for the Division's decision. The outcome of the state proceedings, therefore, was supported by a preponderance of the evidence.

## B.

Reaves next advances two arguments why she was deprived of liberty or property without due process of law. First, she contends that the hearing officer's consideration of evidence other than Logan's denial letter deprived her of due process. Reaves argues that she could "reasonably expect" that the proceeding before the hearing officer would be limited to the statements made in the Logan letter and the information relied upon by Logan in reaching his decision. She asserts that the hearing officer's unexpected consideration of other evidence deprived her of a right to "notice adequate to permit an opportunity to defend against the allegations and present conflicting evidence." (Appellant's Br. at 27). This deprivation, she contends, violated the Due Process Clause.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)

(internal quotation and alteration omitted). At its essence, however, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation omitted). The district court observed that the State never raised the question whether Reaves had a constitutionally-protected liberty or property interest at stake, such that the Due Process Clause is even implicated here. We follow the same course as the district court by assuming the existence of such an interest for purposes of analysis.

We conclude that the hearing officer's consideration of evidence beyond that cited in the Logan denial letter did not deprive Reaves of due process. Reaves's contention is premised on a misunderstanding of the review process under the Rehabilitation Act. The hearing officer's review is to be of the "determinations made by personnel of the designated State unit," 29 U.S.C. § 722(c)(1), but the statute does not require that the review be limited to information or evidence cited by one decisionmaker in the unit. The regulations governing impartial due process hearings explicitly contemplate that the applicant may present new evidence during the hearing, 34 C.F.R. § 361.57(e)(2); Mo. Code Regs. Ann. tit. 5, § 90-4.420(6), and nothing in the regulations precludes the State from presenting evidence as well. Both parties also may present evidence before the Commissioner as part of his administrative review of the hearing officer's decision. 34 C.F.R. § 361.57(g)(3)(i). Any assumption by Reaves, therefore, that the record would remain static, and that the hearing officer (or the Commissioner) would limit his consideration of evidence to that mentioned in the Logan denial letter, was not reasonable.

Nor do we believe that the conduct of the hearing in this case was inconsistent with constitutional principles of due process. Some of the evidence that Reaves says were "new reasons" justifying the Division's denial of services were not new at all – Steele-Lufcy's letter discussed a number of these points, and that letter was sent to Reaves well before the hearing. Reaves also had a meaningful opportunity to be heard on the evidence. She cross-examined Steele-Lufcy at the hearing on the bases

for her denial letter and its contents, questioned the reliability of the Oregon press release and the "www.quackwatch.com" reports, and testified to the effectiveness of electro-dermal devices in her own experience. She was also free to present any additional evidence before Commissioner King that she believed would rebut the evidence considered by the hearing officer. Thus, assuming that Reaves had a cognizable liberty or property interest at stake, the State's procedures afforded due process of law.[2]

Reaves also contends that her due process rights were violated by the Commissioner's refusal to grant her a requested extension of time. As described above, Reaves sought review of the hearing officer's determination by Commissioner King on June 10, 2003. *See* 29 U.S.C. § 722(c)(5)(D); 34 C.F.R. § 361.57(g); Mo. Code Regs. Ann. tit. 5, § 90-4.420. Review was granted on June 11, 2003, and the Division proposed giving Reaves five days to submit additional evidence and to respond after receiving a transcript of the due process hearing. Reaves countered with a request for at least ten days in which to respond after receiving a transcript. Her request was not granted, and she received a transcript of the due process hearing on June 30 along with a request for a response by July 7. Reaves submitted additional information before July 7, and on July 10, Commissioner King rendered his decision.

---

[2]Even assuming, however, that the hearing officer was permitted to consider only Logan's denial letter, the letter alone would have supported the hearing officer's decision. As discussed above, the denial letter recited that the AMA, Medicaid, and Medicare did not approve use of the B.E.S.T. system, and that insurance companies refused to accept the B.E.S.T. system as a billable service. In the context of a business plan involving the provision of medical services, these are good reasons to deny funding. The hearing officer's decision upholding the Division's determination that Reaves's business plan did not contemplate a viable "employment outcome," within the meaning of 34 C.F.R. § 361.5(b)(16), was thus supported by a preponderance of the evidence, even considering only Logan's denial letter.

-11-

In denying Reaves's extension request, Commissioner King cited 34 C.F.R. § 361.57, which requires that any administrative review procedures established by the States result in "an independent, final decision" provided in writing to the eligible individual and to the State unit "within 30 days of the request for administrative review." 34 C.F.R. § 361.57(g)(3)(iii). Reaves requested review on June 10, 2003, making Commissioner King's decision due by July 10, 2003. Reaves argues that because the 30-day time limit for review exists for the benefit of the eligible individual, she should have been able to waive it. Reaves cites no authority for the waivability of the time limit, and it seems to us that the 30-day time limit also benefits the State by ensuring timely decisions.

Even if the time limit had been waivable by Reaves, moreover, the denial of her request for an extension of time did not deprive her of due process. Seven days' response time was a reasonable compromise between Reaves's request for ten days and the State's initial proposal of five days. In addition, Reaves had 27 days between Commissioner King's decision on June 11 to grant administrative review and the July 7 deadline in which to prepare her response. Reaves was able to submit additional materials after receiving the transcript, suggesting that seven days was sufficient response time. (Add. at 8). In light of these facts, we agree with the district court that Reaves received "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation omitted).

For the foregoing reasons, the judgment of the district court is affirmed.

———————————————