RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0469p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SHARON P. DIAMOND,

    *Plaintiff-Appellant,*

    *v.*

No. 04-2327

STATE OF MICHIGAN, MICHIGAN DEPARTMENT OF
CAREER DEVELOPMENT/REHABILITATION SERVICES,
    *Defendant-Appellee.*

>

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 03-00070—Robert Holmes Bell, Chief District Judge.

Submitted: October 26, 2005

Decided and Filed: December 13, 2005

Before: GILMAN and COOK, Circuit Judges; CARR, Chief District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Matthew H. Rick, OFFICE OF THE ATTORNEY GENERAL ECONOMIC DEVELOPMENT & RETIREMENT DIVISION, Lansing, Michigan, for Appellee. Sharon P. Diamond, Haslett, Michigan, pro se.

_____

**OPINION**

_____

    JAMES G. CARR, Chief District Judge. This is an appeal from the U.S. District Court for the Western District of Michigan. Plaintiff-appellant Sharon P. Diamond was a recipient of services and other support from defendant-appellee Michigan Rehabilitation Services ("MRS"), a Michigan state agency providing vocational rehabilitation services under the Rehabilitation Act ("Act"), 29 U.S.C. § 720 *et seq.* Diamond appeals the district court's grant of summary judgment, in which the district court found that MRS complied with the procedures of the Act and concluded that Diamond's individualized plan of employment was reasonably calculated to rehabilitate her.

_____

[*]The Honorable James G. Carr, Chief United States District Judge of the Northern District of Ohio, sitting by designation.

For the following reasons, we AFFIRM the district court.

## BACKGROUND

The Act provides federal funding to assist states in providing vocational rehabilitation services to individuals with disabilities. *See* 29 U.S.C. § 720(a), (b). While state participation in the federal program is voluntary, once a state elects to participate, it must adopt a plan that meets the requirements of the Act. 29 U.S.C. § 721.

States provide vocational rehabilitation services to eligible individuals through Individualized Plans for Employment (IPE). An IPE contains specific terms and conditions "descri[bing] the specific vocational rehabilitation services that are needed to achieve the employment outcome."[1] 29 U.S.C. § 722 (b)(3)(B)(i)(I). It is signed by both the client and a state rehabilitation counselor and must be reviewed annually. 29 U.S.C. § 722(b)(2)(A),(C); § 722(b)(2)(E)(i). Each IPE must be developed and implemented in a manner that affords the eligible individual the opportunity "to exercise informed choice in selecting an employment outcome, the specific vocational rehabilitation services to be provided under the plan, the entity that will provide the vocational rehabilitation services, and the methods used to procure the services." 29 U.S.C. § 722(b)(2)(B). MRS may only supply vocational rehabilitation services set forth in a client's IPE. 29 U.S.C. § 723(a).

Each state must establish procedures for mediation and review of grievances brought by clients. 29 U.S.C. § 722(c). While such review is pending, "the designated State unit shall not institute a suspension, reduction, or termination of services being provided for the individual." 29 U.S.C. § 722(c)(7). Any party "aggrieved by a final decision" in the administrative hearing may bring a civil action for district court review. 29 U.S.C. § 722(c)(5)(J)(i).

## FACTUAL OVERVIEW

In 1997 MRS determined that Diamond, who suffers from multiple disabilities including fibromyalgia, schizophrenia, arthritis, and rheumatism, was eligible for vocational services. Over the next three years, MRS and Diamond entered into a series of IPEs listing Diamond's employment goal as "attorney." In furtherance of this goal, Diamond attended Cooley Law School ("Cooley"). Cooley, however, placed Diamond on administrative probation in August, 1999, and dismissed Diamond for violating the terms of her academic probation on December 15, 2000.

On May 11, 2000, MRS counselor Bill Kinaschuk and Diamond entered into a fourth IPE, the subject of this appeal, with the new employment goal of "clerk." This IPE had an expected plan end date of November, 2000, and provided for review within ninety days. The May, 2000, IPE specifically provided for: "[j]ob placement services, job leads, resume assistance, transportation assistance, car insurance, gasoline, prescriptions, and lap top computer" at an estimated cost of $3,000. It also stated that MRS would amend the plan to change Diamond's employment goal to "attorney" on Diamond's re-admittance to Cooley. It is unclear whether MRS conducted the ninety day review.

Although Diamond's IPE had an expected end date of November, 2000, Diamond continued receiving services until March, 2002. These included not just the services listed in the IPE, but other

---

[1] Section 723(a) of the Act explicitly defines vocational rehabilitation services as "any services described in an individualized plan for employment necessary to assist an individual with a disability in preparing for, securing, retaining, or regaining an employment outcome that is consistent with the strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice of the individual." 29 U.S.C. § 723(a).

services as well.[2]  Diamond refers to such services as "de facto" services.  Examples of these "de facto" services include:  the purchase of two cars, rent for motel rooms, a storage unit, and a house, utilities, and food.[3]

The average client of MRS receives services totaling $1,246.  Diamond received a total of $134,329 in MRS rehabilitation services from October, 1997, to October, 2002.  MRS contacted Kinaschuk's supervisor when expenditures for Diamond's rehabilitation exceeded $100,000.  It later determined that Kinaschuk had provided Diamond with services not authorized under the Act.[4]

In March, 2002, MRS terminated all of Diamond's services except for public transportation, prescriptions, and job related expenses.  It also informed Diamond that she must develop a new IPE to receive further vocational rehabilitation services.

Diamond did not cooperate with MRS to develop a new IPE.  She refused to work with any MRS counselor other than Kinaschuk and repeatedly canceled appointments with other counselors.[5]

On April 23, 2002, Diamond requested a hearing to appeal MRS's decision to terminate services included in her May, 2000, IPE and the "de facto" services not listed in that IPE. Diamond did not ask the state hearing officer to decide whether she should continue to receive benefits pending the hearing officer's final decision.  Instead, Diamond sought a preliminary injunction in federal district court pursuant to the Act's "stay put provision," § 722(c)(7).[6]  The district court denied Diamond's motion because she had failed to exhaust her administrative remedies.

After the district court denied her motion, Diamond requested the state hearing officer to decide whether she should continue to receive benefits pending the hearing.  The state hearing officer denied the request to hear the issue because the administrative hearing had already begun. He found, however, that the Act's stay put provision only restricted MRS from terminating services "in an assessment, plan development, or under a valid IPE."  *See* 29 U.S.C. § 722(c)(7).

The state hearing officer issued a final agency decision on March 19, 2003.  He found that Diamond's May, 2000, IPE was invalid as of November, 2000, and affirmed MRS's decision to terminate Diamond's services.

Diamond sought review of the agency's final decision in the district court.  Diamond alleged that MRS improperly terminated or reduced services provided to her under the May, 2000, IPE, and that MRS violated the Fourteenth Amendment's Due Process Clause in selecting a biased hearing officer.

---

[2]MRS provided Diamond with an extraordinary amount of services while Kinaschuk was her vocational counselor.  Many of the services were obtained on an emergency basis after Diamond appeared on late Friday afternoons claiming she needed immediate emergency assistance.

[3]Monetary support provided by MRS to pay for food, shelter, and clothing of a client is classified as maintenance.  Under the Act, maintenance should be provided for expenses that are necessitated by "the individual's receipt of vocational rehabilitation services under an individualized plan for employment." 34 C.F.R. § 361.5(b)(35).

[4]Kinaschuk explained that although he was aware the expenditures were inappropriate, he responded out of "compassion" to Diamond's purported emergency situations.

[5]Diamond agreed to a new IPE on July 11, 2002.  A few days later, Diamond rescinded her signature, leaving no IPE in place.

[6]The "stay put" provision, § 722(c)(7), bars the state from suspending, reducing, or terminating services provided to an individual pending a decision by a hearing officer.

On September 27, 2004, the district court granted summary judgment in MRS's favor on all of Diamond's claims. The district court found that: MRS complied with the applicable procedures of the Act; MRS's selection of the hearing officer did not violate the Due Process Clause; and Diamond's IPE was "more than reasonably calculated to rehabilitate her."

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Hinchman v. Moore*, 312 F.3d 198, 201 (6th Cir. 2002); *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 451 (6th Cir. 2002).

The district court used a modified *de novo* standard to review the hearing officer's decision. To determine the standard of review under the Act, the district court looked to case law interpreting an identical judicial review provision in the Individuals with Disabilities Education Act ("IDEA") for guidance. *See Kings Local Sch. Dist., Bd. of Educ. v. Zelazny*, 325 F.3d 724, 728 (6th Cir. 2003) (interpreting 20 U.S.C. § 1415(i)(2)). Under a modified *de novo* standard of review, the district court reviews the due process hearing *de novo*, but gives "due weight" to the findings from the state administrative proceeding. *Id.* at 728; *see also Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir. 1990).

Neither party disputes the district court's use of the modified *de novo* standard of review. Therefore, we need not determine at this time whether the district court used the proper standard to review the hearing officer's decision.[7]

## DISCUSSION

Diamond appeals the district court's grant of summary judgment, in which the court found that MRS complied with the procedures of the Act. The court also held that Diamond's individualized plan of employment was "more than reasonably calculated to rehabilitate her."

On appeal, Diamond argues that the district court erred by concluding MRS complied with the procedures in the Act when the agency 1) failed to conduct an annual review of the May, 2000, IPE, and 2) terminated services before the conclusion of her administrative hearing.

The district court looked to the standards developed under IDEA for guidance in determining whether MRS committed a procedural violation under the Act.

The language in § 722(c)(5)(J) is similar to the language of the judicial review provision in IDEA. *Compare* 29 U.S.C. § 722(c)(5)(J)(i), (ii) *with* 20 U.S.C. § 1415(i)(2)(A), (C). Thus, applying the standards developed under IDEA will aid this Court's analysis of similar provisions under the Act.[8]

---

[7]The Eighth Circuit, however, has adopted the modified *de novo* standard as the standard of review for a district court to use under the Act. *Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 675, 681 (8th Cir. 2005) ( "We conclude, therefore, that as under the IDEA, the reviewing court should determine whether the agency's decision is supported by a preponderance of the evidence, while giving 'due weight' to the conclusions reached in the State's due process hearing.").

[8]The district court applied standards developed under IDEA to analyze Diamond's claim under § 722(c)(5)(J). It determined that Congress took language directly from IDEA to create provisions in the 1998 amendments to the Act.

Diamond argues this reliance was improper. The district court, however, appropriately used precedent developed under a similarly worded statutory provision in IDEA as persuasive authority. *See Reaves*, 422 F.3d at 680-81 ("We agree that the district court was correct to look to cases interpreting the IDEA for guidance regarding the appropriate standard of

Review under IDEA's judicial review provision, 20 U.S. C. § 1415(i)(2), requires a two step inquiry. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982). First, a reviewing court must determine whether the state followed the procedures required by IDEA. *Id.* at 206-07. Second, the court must determine whether the individualized educational program developed through IDEA's procedures is "reasonably calculated to enable the child to receive educational benefits." *Id.* If the court finds that the state met both requirements, then the state has complied with the obligations required by Congress under IDEA, and the court can require no more. *Id.* at 207.

Furthermore, in *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001), we held that before a plaintiff is entitled to relief for a procedural violation under IDEA, the court must determine that a state's procedural violation caused substantive harm.

## I. Failure to Conduct Annual Review

First, Diamond argues that MRS violated the Act's procedures when it did not conduct an annual review of her IPE as required by § 722(b)(2)(E)(i) of the Act.

The district court did not determine whether MRS and Diamond reviewed the May, 2000, IPE within the requisite ninety day time period. It found, however, that even if MRS violated the Act's requirement for annual review, Diamond could not demonstrate any substantive harm from any such procedural violation. Indeed, instead of harm, the district court found that Diamond "experienced a windfall at public expense, as excess benefits continued unabated."

An initial and dispositive question is whether the IPE on which Diamond bases her claim had expired by its own terms on November, 2000.

The May, 2000, IPE signed by Diamond and MRS stated that its expected end date was November, 2000. The state hearing officer concluded that the May, 2000, IPE expired by its own terms on November, 2000. The district court found that MRS did not violate the procedures of the Act because the May, 2000, IPE had expired and was no longer in effect.

Under 34 C.F.R.§ 361.50(d)(2) a state agency may under the Act place an expected end date on an eligible individual's IPE. This regulation provides that the

> State unit may not establish absolute time limits on the provision of specific services or on the provision of services to an individual. The duration of each service needed by an individual must be determined on an individual basis and reflected in that individual's individualized plan for employment.

34 C.F.R. § 361.50(d)(2).

Thus, the expected end date placed on Diamond's May, 2000, IPE by MRS was not improper and, accordingly, her IPE expired on its expected end date of November, 2000.

Although Diamond's IPE expired on November, 2000, she continued to receive an abundance of services both listed and not listed in her expired IPE. Thus, the district court was correct in finding Diamond benefitted from, rather than was harmed by, any failure of MRS to undertake a periodic review of her IPE. Accordingly, Diamond cannot demonstrate any substantive harm from the possible failure of MRS to conduct an annual review. Because Diamond cannot

---

review under § 722(c)(5) of the Rehabilitation Act, given that the text and structure of the statutes are virtually identical.").

demonstrate any substantive harm, she is not entitled to any relief under the Act for a possible procedural violation.

Therefore, we find the district court correctly rejected this contention.

## II. Termination of Services

Finally, Diamond argues that MRS violated the "stay put" requirement of § 722(c)(7) by terminating the services listed in her May, 2000, IPE and the "de facto" services (i.e., services provided to her, though not listed in her IPE) before the conclusion of her administrative hearing.

The district court found that the stay put provision only applies to services received under a valid IPE. Accordingly, the district court found that MRS did not violate the stay put provision because, although Diamond was receiving substantial services, she was not receiving them under a valid extant IPE.

The Act defines vocational rehabilitation services as "any services described in an individualized plan for employment." 29 U.S.C. § 723(a). Because Diamond's IPE expired in November, 2000, none of the services provided to her for the following two years meet the definition of vocational rehabilitation services under the Act.

Thus, regardless of whether the services MRS terminated in March, 2002, were listed in Diamond's expired IPE, the termination could not violate the Act's stay put provision because the provision only applies to services under an extant IPE. *See Cordrey v. Euckert*, 917 F.2d 1460, 1468 (6th Cir. 1990) ("The stay-put provision applies only to services included in the child's IEP.") (decided under a similar statutory "stay put" provision in the Education for all Handicapped Children Act, 20 U.S. C. § 1400 *et seq.*).

As of November, 2000, Diamond did not have an IPE from MRS.[9] Thus, when MRS terminated Diamond's services prior to her administrative appeal, it did not violate the Act's stay put provision.

Therefore, the district court's opinion should be affirmed.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.

---

[9] The services provided not pursuant to a valid IPE were improper under federal law. *See* 29 U.S.C. § 721(a)(1)(A), (B).