GRUENDER, Circuit Judge,
concurring in the judgment.
I agree with the district court that the record supports the conclusion that J.H. is a “child with a disability” under the IDEA, 20 U.S.C. § 1401(3), because he suffers from an “other health impairment,” and, therefore, I concur in the judgment affirming the district court. Nevertheless, I disagree with the court’s analysis to the extent that it accords no deference whatsoever to the underlying administrative decision of the Due Process Panel. Applying the proper standard, I also disagree with the court’s conclusion that J.H. suffers from “serious emotional disturbance.”
While review of an administrative decision under the IDEA is not as deferential as the well-known “substantial evidence test that courts ordinarily apply in federal administrative law cases,” courts are instructed to give “due weight” to the proceedings of the Due Process Panel and may not “substitute their own notions of sound educational policy for those of the school authorities which they review.” Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 654-55 (8th Cir.1999) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). The court holds that the “due weight” standard does not apply in this case because the Due Process Panel made “neither factual findings nor educational policy decisions.” Ante at 1026. To the contrary, while the Panel may not have provided detailed findings of fact, its decision to deny IDEA services to J.H. surely falls within the ambit of educational policy. In any event, the principle of affording due weight to a *1029 Due Process Panel’s decision is not premised narrowly on the presence of express findings of fact. See Rowley, 458 U.S. at 206, 102 S.Ct. 3034 (“The fact that § 1415(e) requires that the reviewing court ‘receive the records of the [state] administrative proceedings’ carries with it the implied requirement that due weight shall be given to these proceedings.” (emphasis added)); Lathrop R-II Sch. Dist. v. Gray ex rel. D.G., 611 F.3d 419, 423 (8th Cir. 2010) (“[T]he district court must accord due weight to the administrative panel’s decision.” (emphasis added)). Therefore, I would conclude that the court should have afforded due weight to the Due Process Panel’s decision.
With regard to our standard of review of the district court’s decision, I agree with the court that de novo review is appropriate, although I reach that conclusion by a different path. The court indicates that the district court merely drew legal conclusions from settled facts in the administrative record. I disagree. Before reaching its ultimate legal conclusion that J.H. suffers from a “serious emotional disturbance” and from an “other health impairment,” the district court necessarily resolved several underlying factual questions from conflicting evidence in the administrative record. For example, the district court’s findings that “JH was unable to build and maintain satisfactory interpersonal relationships” and “JH suffered from ... ADHD,” Hansen v. Republic R-III Sch. Dist., No. 09-3119, slip op. at 6, 9 (W.D.Mo. Feb. 5, 2010), can only be characterized as factual findings because the record contains evidence to the contrary on both points. Because the district court heal'd no new evidence and made its determinations after reviewing only the record of the Due Process Panel proceeding, however, I conclude that de novo review is appropriate for the district court’s factual findings as well. See JH ex rel. JD and SS v. Henrico Cnty. Sch. Bd., 326 F.3d 560, 566 (4th Cir.2003) (“[W]e need not defer to factual recitations made by a district court from the administrative record, because that court stands in no better position than do we in reviewing the record.” (quoting MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 530-31 (4th Cir.2002))); see also Reaves v. Mo. Dep’t of Elementary & Secondary Educ., 422 F.3d 675, 681 (8th Cir.2005) (“[W]here the district court received no new evidence and made no independent factual findings, we conclude that the de novo review of the district court is appropriate.”).
The existence of conflicting testimony in the administrative record on key points serves to illustrate that due weight should be given to the Due Process Panel’s decision because “the administrative panel had an opportunity to observe the demeanor of the witnesses.” Lathrop R-II, 611 F.3d at 427 (quoting Strawn v. Mo. State Bd. of Educ., 210 F.3d 954, 958 (8th Cir.2000)). Affording due weight to the Due Process Panel’s decision, I come to a different conclusion than the court on the question of whether a preponderance of the record evidence supports the finding that J.H. suffers from “serious emotional disturbance” because he displays an “inability to build or maintain satisfactory interpersonal relationships with peers and teachers.” See Rowley, 458 U.S. at 205, 102 S.Ct. 3034 (“[A] court ‘shall ... bas[e] its decision on the preponderance of the evidence....’” (quoting § 1415(e)(2))). The court identifies some evidence in the record that supports J.H.’s claim, such as J.H.’s bipolar diagnosis, evidence that J.H. was disrespectful toward figures of authority, and evidence that J.H. struggles with academic assignments. However, the court improperly discounts the testimony of Matt White, the director of special services for *1030 Republic, who stated that J.H. has “demonstrated to us [Republic staff] that he can develop appropriate relationships. He’s doing it right now.” White also testified that J.H. had been able to form relationships with his teachers: “he did well with some [teachers] and not well with others.” White stated that Joni Ragain, a Republic counselor, “had a very close relationship with [J.H.].” The court also overlooks the testimony of Mary Newby, J.H.’s sixth grade math teacher, who stated that she thought J.H. was not in need of special education services because “[t]he time that he was with me, he was one of my top students when he was in my classroom. ... I never had any behavior problems with [J.H.].”
Furthermore, the court overlooks evidence which supports Republic’s argument that J.H. is ineligible for IDEA services under the “serious emotional disturbance” prong because he is socially maladjusted rather than emotionally disturbed. Matt White described socially maladjusted students as the “kinds of kids that have difficulty taking responsibility for their actions. They have very little or no remorse. They know the rules but still continue to want to break them. They — their behavior is by design, and they use their behavior to manipulate the situation to get their needs met.” In contrast, White stated that “[e]motionally disturbed kids typically have things that are much more internalizing. ... They have faulty feelings. They have a lot of guilt and a lot of remorse. Sometimes they have delusions and hallucinations.” White testified that the Republic IDEA eligibility team determined that J.H. exhibited behaviors more akin to social maladjustment than emotional disturbance because “[J.H.] controls his behavior. He turns it on and turns it off.” An example of such control is evident in the testimony of Dr. Anna Ross Hertel, a psychologist who examined J.H. Dr. Her-tel testified that, at the start of her examination, J.H. was “extremely angry, [he] did not want to come back to the testing room willingly, [he] threw his cell phone, smashed it into pieces.” Nevertheless, after “Mr. Hansen offered a number of items that he would purchase [for J.H.] if he would just complete the testing,” including “a laptop from Best Buy,” J.H. agreed to continue the examination. Once J.H. had accepted his father’s proposal, Dr. Hertel stated that “he was compliant, pleasant, completed everything I asked him to do ... [and] apologized for behaving in such a manner.”
After considering the entire record de novo and giving due weight to the Due Process Panel’s decision, I would find that the preponderance of the evidence does not support the conclusion that J.H. was incapable of forming and maintaining relationships with peers or teachers and that J.H. was not merely socially maladjusted. Therefore, I cannot conclude that J.H. suffers from “serious emotional disturbance” under the IDEA. See R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 944, 945 (9th Cir.2007) (where there was “conflicting evidence regarding whether [a student] could maintain satisfactory relationships [with] testimony on both sides,” the court found that the student “was not eligible for IDEA relief under this prong”).
Nevertheless, even giving due weight to the Due Process Panel’s decision to deny IDEA benefits to J.H., I agree with the court that the preponderance of the record evidence supports its finding that J.H. suffers from an “other health impairment” that adversely affects his educational performance. In particular, J.H.’s treating psychiatrist, Dr. Colby Wang, conclusively diagnosed him with ADHD, and two other experts assigned him an ADHD rule-out diagnosis. Dr. Hertel testified that J.H. *1031 displayed “hyperactivity, impulsivity, [and] difficulty concentrating.” Renee Doubleday, J.H.’s Republic-provided tutor, testified that J.H. often would refuse to do work, use profane language, and run around the room during their tutoring sessions. Doubleday stated that she and J.H. had “quite a few sessions that had not gone very well” before he began taking medication for ADHD. Moreover, there are several independent indications that J.H.’s educational performance improved after he began taking ADHD medication.
In conclusion, I disagree with the court’s holding that due weight need not be afforded to the underlying administrative decision of the Due Process Panel. I also agree with the Due Process Panel’s decision that J.H. does not suffer from “serious emotional disturbance.” However, even giving due weight to the Due Process Panel’s decision, I agree with the district court that J.H. is a “child with a disability” under the IDEA because he suffers from an “other health impairment” that adversely affects his educational performance. As a result, I concur in the judgment of the court.